Plaintiff brought suit to recover a balance alleged to be due on a promissory note executed by the defendant. The note was dated October 1, 1918, in the amount of $1,972.69; the balance claimed to be due when the action was commenced was $674.99 and interest.
The answer admits the execution of the note but alleges want and failure of consideration. A counterclaim is then set forth, based substantially upon the following recited facts: On December 18, 1912, the defendant entered into a contract with Smith 
Sherman to purchase a quarter section of land in Morton county, for $6,400. Smith, one of the vendors in the land contract, was president of the plaintiff bank at the time. Defendant received credit on the purchase price in the sum of $600 and executed two notes, one in the sum of $2,000, the other in the sum of $3,800, for the balance of the consideration. The purchase price was to be paid by delivering one half of the annual crop. The defendant farmed the land for several years, and delivered to *Page 441 
Smith, pursuant to the contract, crops of the value of $7,955.75. On December 19, 1918, Smith Sherman served notice of cancellation, alleging defaults in failing to pay taxes, and thereafter cancelled the contract and repossessed the land. The note in suit is the last of several renewals of the $2,000 note executed at the time of the original purchase. Because of the cancellation of the contract the consideration for this note failed. The plaintiff at all times had knowledge of these facts and the consideration for the note; and Smith fraudulently made plaintiff payee in the note, instead of Smith Sherman. The defendant did not default under the contract and the cancellation thereof was wrongful and was made "to cheat and defraud this plaintiff out of his property." It is further alleged, as a part of the counterclaim, that the plaintiff fraudulently represented to the defendant that the note in suit was a renewal of the note for the purchase price of the land. In 1913 defendant sold Smith and Sherman one hundred sixty acres of land in Adams county for $3,200, subject to a mortgage of $600 assumed by Smith Sherman; that out of the remaining $2,600 Smith agreed to pay certain enumerated debts of the defendant; and Smith and the plaintiff have failed to account for $400 remaining of the balance of $2,600 after defendant's debts had been paid. The defendant then asks a set-off and counterclaim against the plaintiff in the total sum of $8,355.75.
The plaintiff did not reply to this counterclaim; but the issues raised thereby were litigated as if a general denial had been interposed.
A trial to a jury resulted in a verdict in favor of the defendant for $8,355.75. A motion for a new trial was made upon several grounds and denied by the trial court. The appeal is from this order.
Plaintiff assigns numerous errors based on the rulings of the trial court upon the admissibility of evidence, motions to strike portions of the testimony, the ruling upon the motion for a new trial, and the instruction to the jury. It is also urged that the evidence is insufficient to support the verdict.
The appellant contends for two propositions of primary importance, first, that Smith and Sherman were dealing individually and not for the bank, when they entered into the land contract with the defendant; and second, that the note in suit evidenced the balance of an indebtedness owing by defendant to the bank, and arising out of transactions *Page 442 
wholly unconnected with the land deal of Smith Sherman. Sherman, it appears, was also connected with the bank. It is the contention of the defendant, on the other hand, that the evidence is sufficient to support a finding by the jury that Smith and Sherman were in reality acting for the bank; that the bank received the full benefit of the transaction and of the payments made on the land contract by the defendant; and that the note in suit is a renewal of one of the installment notes executed by the defendant when he purchased the land in Morton county from Smith and Sherman. In this connection it must also be noted that if the note in suit is a renewal of the purchase price note, and if the plaintiff be not holder thereof in due course, an action cannot be maintained thereon for the reason that the land contract was cancelled and consequently unpaid installments cannot be collected.
We shall first summarize the evidence bearing on the question whether the transaction was in reality that of the plaintiff bank and not of Smith and Sherman individually; second, the evidence tending to show that the note in suit is a renewal of one of the installment notes executed at the time when defendant purchased the Morton county land from Smith and Sherman; and third, the evidence bearing upon the question of damages.
The defendant Kopp was born in Russia and testified through an interpreter, claiming to be unable to read, write, or speak the English language. He testifies that he had all his dealings with Smith, who he knew was president of the plaintiff bank; and that the transaction of purchase took place in the bank. Defendant says that he supposed that he was dealing with the plaintiff bank although all the transactions in behalf of the bank were conducted by Smith. Smith was in active control of the bank at the time. On December 18, 1912, defendant says he signed two notes, one for $2,000 and one for $3,800 evidencing the purchase price of the land; this last note is not in evidence; that about ten days later, he executed a mortgage, securing the $2,000 note, which is referred to in the record as defendant's exhibit "B." This mortgage, it appears, was delivered to Smith in the bank. In November, 1913, a new mortgage was executed securing a note apparently a renewal of a note executed in December, 1912. Defendant says that all the notes were in connection with the land deal, and that Smith so told him. This instrument was a crop mortgage purporting to cover crops to be raised *Page 443 
on the premises described therein (the Morton county land) during the years 1914, 1915, 1916, 1917, 1918, 1919, 1920, 1921 and 1922. This mortgage contains the following recital: "This mortgage is given to secure the purchase price of the land hereinbefore described." In 1914, 1915, 1916 and 1917, similar mortgages were executed covering the crops, and also other personal property. These instruments, however, do not contain the recital that the debt secured was the purchase price of the land in Morton county. In all the mortgages the plaintiff's name is printed as mortgagee. The mortgage, dated November 20, 1913, which contains the recital above set forth is witnessed by Smith, the President of the bank. All of the other mortgages with one exception, are also witnessed by President Smith. One witness testifies that wheat tickets, covering wheat grown by the defendant on the Morton county land, were delivered to the bank.
We do not deem it necessary to discuss the evidence upon this point further. The jury were justified in finding that the bank was the real principal in the transaction. We believe that the statement in the mortgage, executed to the bank in November, 1913, to the effect that it was a purchase money mortgage, securing the purchase price of the land sold by Smith and Sherman, could properly be construed by the jury as an admission by the plaintiff that it was the real party in interest. The mortgage was the regular form used by the bank, was prepared and witnessed by the President and the bank later received the benefit of renewals of the instruments and of a foreclosure under one of them. We think the evidence as a whole supports a finding by the jury that the bank was the real principal in the transaction.
A finding that Smith and Sherman acted for the bank is not of controlling importance unless it also appear that the note in suit is a renewal of a note given in the original land deal and represents a part of the consideration for the purchase from Smith and Sherman of the Morton county property. Of course, the right to recover any portion of the unpaid purchase price ceased to exist when the land contract was cancelled.
Defendant Kopp maintains that the note is a renewal of an installment note executed by him when he purchased the land; and that it did not originate in indebtedness to the plaintiff independently of that transaction. His testimony is specific on this point. It is Kopp's contention *Page 444 
that the crop to be delivered under the contract was turned over to the plaintiff bank; that after he had made many and substantial payments on the contract, the bank's officers took the land away from him while the bank retained all the benefits of his performance up to the moment of the cancellation of the land contract. Kopp insists that he had no dealings with Sherman, that he dealt only with Smith and that he supposed Smith and the plaintiff bank were one and the same thing. His testimony is far from lucid on all parts, but it is fairly susceptible to this interpretation. In order to prevail on this point, Kopp must identify the note in suit with the purchase price of the Morton county land.
Kopp testifies and the exhibit shows that the land contract was signed December 18, 1912; he then says: "About ten days after I signed that contract I gave Smith a mortgage securing the land note for $2,000 which I had signed when the contract was made." This mortgage is evidently on the regular chattel mortgage form used by the plaintiff bank, and in it the bank is named as mortgagee. It secures a note for $2,000, and is witnessed by President Smith. The property mortgaged consists of ten horses, some machinery, and all crops to be raised on the Morton county land, during the season of 1913. On November 20, 1913, defendant again executed a chattel mortgage, to which reference has already been made, on some cattle, and on all crops to be raised on the Morton county land during the next nine years. The instrument is on the regular blank form used by the bank, and the bank is named mortgagee therein. It secures one note for $2,000, and one note for $303.35. This is the mortgage which contains the purchase price security clause set out, supra. It does not describe any of the personal property contained in the mortgage executed the year before; the jury might well have inferred that as to property, other than crops, it was intended to be cumulative. On November 9, 1914, another mortgage was executed, this time covering one half the crop to be raised on the Morton county land during 1915, and substantially all the horses, cattle and machinery described in the two prior mortgages. This process was annually repeated until November 13, 1917, when the last mortgage was made. All mortgages named the bank as payee. The last instrument was foreclosed in October, 1918, and the proceeds of the sale were received by the bank and applied on the indebtedness, which, *Page 445 
on that date, had been reduced to $1,972.69 and interest, leaving the balance claimed in this action.
With respect to all of these renewals of notes and execution of mortgages annually, Kopp testifies that they all had reference to the purchase price of the land. Some corroboration of his testimony is found in the fact that in one of the mortgages it is expressly stated that the lien thereof secures an unpaid portion of the purchase price of the Morton county land. The plaintiff offers no explanation of this circumstance. Kopp says Smith told him that all the notes he signed were "on the land." We think the evidence supports a finding by the jury that the note in suit is a renewal of an original purchase price note and that an action cannot be maintained thereon because the land contract was, in all things, cancelled in 1918. Plaintiff's books were not produced, nor was there any conclusive record evidence offered respecting the alleged indebtedness of Kopp to the plaintiff outside the land deal. Such indebtedness as was proved, Kopp testified the plaintiff agreed to pay when the Adams county land was transferred to it. The evidence is not very clear or satisfactory, but is, we think, sufficient to support a verdict on this point.
It is next insisted that the verdict is excessive and, as to the amount of damages, is without support in the testimony. It is a sufficient answer to point out that the defendant testified to items of payment to the bank under the land contract, which he claims was wrongfully cancelled, which, with the $400 asserted by him to have been retained by the bank out of the Adams county land, taken over by the plaintiff bank, and the proceeds of the chattel mortgage foreclosure sale, aggregate the amount of the verdict. There was conflict and the jury resolved it against plaintiff. The verdict has substantial support in the testimony and must stand.
From the testimony of the defendant it appears that there was no default under the land contract at the time Smith Sherman cancelled it and took possession of the land. In other words, according to defendant's testimony, the cancellation was wrongful.
When a land contract is rightfully rescinded by the purchaser, he is entitled to a restoration of the purchase money. 39 Cyc. 1439. That is the theory on which the case at bar was tried on this point — that the contract had been broken by the plaintiff, through wrongful cancellation, *Page 446 
and that therefore, Kopp was entitled to rescind and recover the consideration. No objection is made to this theory, except of course that there is no evidence to show that the bank was the principal in the Morton county land deal.
There remain to be considered the alleged errors based upon rulings on objections to evidence, and exceptions to the instructions of the trial court.
Defendant's counsel, while the subject matter of the cancellation of the land contract was under investigation, asked defendant why he did not engage a lawyer. To this question the plaintiff objected on the ground that it was incompetent, irrelevant and immaterial. Defendant answered: "I was too green." It may be conceded that the objection should have been sustained. We believe, however, that the error, if any, in permitting the witness to answer is nonprejudicial. Again, the following question was asked "And all these times you thought that Smith and the bank was the same thing?" Objection was made as follows: "We object to that as immaterial, assuming something that is a conclusion." Later, a motion was made to strike the answer on the ground that it was not the best evidence and tended to vary the terms of a written instrument. The defendant testified substantially to the same point, elsewhere, and without objection. Early in his examination, he was asked: "In 1912, did you not buy some land from Smith or the bank?" A: "He says he figured he was dealing with the bank, but he was dealing with Mr. Smith, as far as he knows now." If it was error it was without prejudice and does not require a reversal of the judgment and a new trial.
With respect to alleged errors in the instructions of the court, the position of appellant is wholly without merit. The parts to which exception is taken principally state the law with respect to the theory of defendant's defense and counterclaim. The court told the jury, in substance, that there was dispute as to whether the note in suit was a renewal of an installment note given for the purchase price of the Morton county land, or was a renewal of another note given to the bank independent of that land deal; and that it is for the jury to determine what the fact is on this point. The court said the jury must determine whether Smith Sherman acted for the bank with reference to the land contract and whether the plaintiff bank had failed to give *Page 447 
consideration to the defendant for the note in suit. Again, the court says in the instructions challenged that with reference to the defense the jury must determine whether the note in suit evidences the purchase price of the Morton county land, and that, if the jury so find, then it must determine whether the contract was made in behalf of the bank through duly authorized officers. The court then said: "If you find on both these questions for the defendant, that is, that the note evidences the purchase price and the land deal was made in plaintiff's behalf by its officers, and if you further find said contract had been cancelled and terminated and the land has been taken back by the vendor, then I instruct you as a matter of law that the consideration of the balance due on said note has fallen, and the plaintiff cannot recover thereon, because under the law where a vendor in a land contract has elected to cancel the same and has restored the land to himself, he cannot afterwards bring an action and recover the purchase price." The instruction clearly and correctly states the law and it was applicable to evidence in the case and the theory of defendant's counterclaim. Again, as illustrative of the manner in which the issues were presented, the court said to the jury:
"Now then, you will first determine whether or not the plaintiff bank is the actual vendor of this Morton county land. Second, whether or not the plaintiff bank received the payments made under said contract, as intended by the defendant. Third, whether or not there existed any default in the performance of said contract at the time of cancellation and termination thereof. Fourth, whether or not plaintiff caused said contract to be cancelled and terminated and took back the land without any default on the part of the defendant, and whether or not it had knowledge that the defendant was not in default. If you answer those questions in favor of the defendant, that is, to say, if you find that the plaintiff was the actual vendor under said contract for the sale of the land, and that the plaintiff received the payments alleged by the defendant, and that the plaintiff wrongfully and unlawfully cancelled said contract and took same back when there was no default therein and had knowledge that there was no default and did same for the purpose of cheating and defrauding the defendant, then you should find in favor of the defendant on his counterclaim. And in such instance the measure of recovery will be the reasonable market value of the property *Page 448 
that the plaintiff received for payment under said contract — the reasonable market value at the time and place the property was received by the plaintiff. If you find that the plaintiff received money for some of the payments, then the amount of said money would be the measure of recovery of said item."
The exceptions to the instructions are based largely upon the assumption that there is no evidence from which the jury could find that the contract for the sale of the Morton county land was made in behalf of the plaintiff bank as the real principal. As has been pointed out, this assumption is unfounded and there is evidence from which the jury could find the plaintiff was in fact the principal in that transaction. We think the instructions on the whole are clear, concise, and accurately state the law applicable to the theory on which the case was tried, and to the evidence as adduced by both sides.
The jury found that the bank was the principal in the Morton county land deal, and that the Morton county land contract was wrongfully cancelled. From this finding it results that the defendant is entitled to recover everything he had paid under the contract; that the vendor in the contract could not recover any portion of the unpaid consideration. The jury found a verdict on defendant's counterclaim and it has substantial support in the testimony.
Finding no reversible error in the record, the judgment of the trial court is affirmed.
CHRISTIANSON, Ch. J., and BURKE, BIRDZELL, and NUESSLE, JJ., concur. *Page 449